IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

WILLIAM T.,[1]                          §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §        Civil Action No. 6:23-CV-00011-BU
                                        §
MARTIN O'MALLEY,[2]                     §
Acting Commissioner of Social Security, §
                                        §
        Defendant.                      §

## MEMORANDUM OPINION AND ORDER

Plaintiff William T. seeks judicial review of a final adverse decision of the Commissioner of Social Security (the Commissioner) under 42 U.S.C. § 405(g). Dkt. No. 1. Senior United States District Judge Sam R. Cummings transferred this case to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Dkt. No. 5. Here, the parties have consented. Dkt. No. 19.

## I.      BACKGROUND

Plaintiff alleges a disability that began on June 24, 2016, and originated because of a history of lumbar scoliosis with disc bulges, hypothyroidism, mild cerebral dysfunction,

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

[2] Although Kilolo Kijakazi was the Acting Commissioner at the time this action was filed, the current Commissioner, Martin O'Malley, is "automatically substituted as a party" by operation of law. Fed. R. Civ. P. 25(d); *see also* 45 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

and major depressive disorder. Dkt. No. 1 (Tr.) at 19. On May 1, 2017, Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income. Tr. at 62, 73, 83–84. On June 21, 2017, the Agency denied Plaintiff's claims and subsequently upon reconsideration on September 12, 2017. Tr. at 83–84, 109–10. On August 1, 2018, Administrative Law Judge, Larry C. Marcy issued a denial of Plaintiff's claims. Tr. at 17–27. On October 25, 2018, Plaintiff appealed the matter to this Court and on November 25, 2020, this Court issued a decision reversing and remanding the Commissioner's decision. Tr. at 732, 741–54.

On October 17, 2022, Administrative Law Judge (ALJ), Darren Hamner held a hearing regarding this matter. Tr. at 692. The ALJ then issued an unfavorable decision on November 23, 2022. Tr. at 628–45. The ALJ determined that Plaintiff was not disabled and thus not entitled to disability benefits. Tr. at 632. The ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform sedentary work as defined at 20 C.F.R. §§ 404.1567(a), 416.967(a), except:

> He is limited to occasional balancing, bending, stooping, kneel, crawling, crouching, and climbing of ramps and stairs, and he needs to use a [cane] to ambulate. He can perform simple job tasks (defined as routine repetitive tasks with little variation in duties and involving simple judgment-making).

Tr. at 635. The ALJ further determined that while Plaintiff was incapable of performing his past work, he could perform other work. Tr. at 642–44.

The Appeals Council did not assume jurisdiction, thus rendering the ALJ decision the final agency decision. Plaintiff subsequently filed this action in federal district court.

## II.    LEGAL STANDARDS

To be entitled to Social Security benefits, a claimant must show that they are disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

Although a claimant bears the burden of establishing whether they meet the requirements for a disability, an ALJ's finding that a claimant has not satisfied their burden must be based on substantial evidence. *See, e.g.*, *Belk v. Colvin*, 648 F. App'x 452 (5th Cir. 2016) (per curiam). And judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994);

3

*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S.C. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies their initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant can perform. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

4

## III.    DISCUSSION

The ALJ, acting on behalf of the Commissioner, performed the five-step evaluation process here. *See* Tr. at 628–645; Dkt. No. 10–1. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 24, 2016, his alleged onset date. Tr. at 630. At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar scoliosis with disc bulges and annular tears at L4–L5 and L5–S1 of the lumbar spine; hypothyroidism; mild cerebral dysfunction; and major depressive disorder. Tr. at 631.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or equaled the severity of one of the impairments listed in the Social Security regulations. Tr. at 632. Also at step three, the ALJ found that Plaintiff has the residual functional capacity to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He can lift and/carry 10 pounds occasionally and less than 10 pounds frequently, stand/walk 2 hours of an 8-hour workday and sit 6 hours of an 8-hour workday except he can never climb ladders, ropes, or scaffolds. He is limited to occasional balancing, bending, stooping, kneel, crawling, crouching, and climbing of ramps and stairs, and he needs to use a came to ambulate. He can perform simple job tasks (defined as routine repetitive tasks with little variation in duties and involving simple judgment-making).

Tr. at 635.

At step four, the ALJ determined that Plaintiff was unable to perform past relevant work. Tr. at 642. But after considering the testimony of the vocational expert (VE) together with Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff can make a successful adjustment to other work that exists in

significant numbers in the national economy. Tr. at 642–43. Thus, the ALJ found that Plaintiff was not disabled and capable of performing other work. Tr. at 645.

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ's evaluation of Douglas Buchanan, M.D.'s opinion was legally inadequate; (2) the ALJ failed to support his step five finding with substantial evidence; (3) the ALJ did not sufficiently develop the record with opinion evidence addressing Plaintiff's mental impairments.[3] *See* Dkt. No. 14 at 4.

### A. The ALJ's evaluation of Dr. Buchanan's opinion was legally adequate.

Plaintiff alleges that the ALJ did not explain how he considered supportability and consistency in assessing Dr. Buchanan's opinion, as required by 20 C.F.R. §§ 404.1520c, 416.920c. *Id.* As to supportability, Plaintiff argues that the ALJ found unpersuasive Dr. Buchanan's opinion that Plaintiff is unable to carry 10 pounds solely because Buchanan's opinion "appears to be based on the claimant's subjective complaints of upper extremity pain and weakness, for which there is no support in the medical record." *Id.* at 9. Plaintiff characterizes this assessment by the ALJ as "rank speculation" and urges that it fails to specifically cite to Dr. Buchanan's actual explanation on Plaintiff's ability to lift and carry. *Id.* at 9–10. That full explanation, Plaintiff argues, includes Dr. Buchanan's attribution of

---

[3] The ALJ's references in his decision to Dr. O. Martin Franklin are references to Dr. Douglas Buchanan who practices and shares letterhead with Dr. Franklin. In his Brief, Plaintiff states that: "The ALJ refers to Dr. Buchanan as Dr. O. Martin Franklin (AR 642), which is the first name on letterhead at the beginning of Dr. Buchanan's exam report (AR 1001). Compare AR 1012 (final opinion features Dr. Buchanan's signed and printed name)." Dkt. No. 14 at 6. For simplicity, the undersigned will refer only to Dr. Buchanan who offered the opinion at issue here.

Plaintiff's lifting limitations to his "low back pain with radiculopathy," "trouble bending, lifting, and prolonged standing/walking." *Id.* at 10.

Additionally, Plaintiff argues that the ALJ "declined to address Dr. Buchanan's manipulative limitations," other than summarizing them. *Id.* at 10. This omission, Plaintiff argues, allowed the ALJ to avoid addressing Dr. Buchanan's findings that support those limitations, *i.e.*, "3–4/5 left handgrip, 4/5 left upper and lower extremity strength, and decreased sensation to light touch in the left hand." *Id.*

The Commissioner responds that the ALJ considered all of Dr. Buchanan's findings in rendering his decision—including those that Plaintiff argues supported Dr. Buchanan's limitations and were ignored by the ALJ—"along with other findings" that were consistent with Buchanan's opinion and those that were inconsistent. Dkt. No. 17 at 14. Specifically, the Commissioner responds that the ALJ considered Dr. Buchanan's "checkbox opinion" that Plaintiff could occasionally lift to 10 pounds and never carry similar weight. *Id.* at 12. The ALJ found that the *lifting* limitation was supported by Dr. Buchanan's examination. *Id.* But the ALJ did not find Dr. Buchanan's *carry* limitation to be supported because it was based on Plaintiff's subjective complaints "for which there was no support in the medical record." *Id.* at 13.

As to consistency, Plaintiff argues that "the ALJ's discussion of Dr. Buchanan's opinion merely implies (without directly asserting) a generalized inconsistency with the record," which fails to explain "*how* the ALJ considered consistency," as required by the applicable regulations. Dkt. No. 14 at 10. This, Plaintiff argues, "is why courts have held

that a mere summary of the record is insufficient to satisfy the requirement of considering consistency." *Id.* at 11.

Otherwise, Plaintiff argues that the record contains evidence that is consistent with Dr. Buchanan's opinion. *Id.* at 11. For example, Dr. Rutledge's opinion that Plaintiff (1) could sit for eight hours and lift no weight, and (2) was restricted to a sit-down job. *Id.*; Tr. at 499–505. Thus, Dr. Rutledge agrees with Dr. Buchanan that Plaintiff would be restricted from "much lifting/carrying and standing/walking[.]" Dkt. No. 14 at 11–12.

Additionally, Plaintiff argues that clinical notes from 2017 and 2018 are consistent with Dr. Buchanan's restrictions, including the notes of Dr. Luis Duarte, Duarte's nurse practitioner Heather Hays, and Mary Beth Luttrell, FNP. *Id.* at 12. Clinical notes from these providers revealed complaints of "mid-to lower-back pain that radiated to the left lower extremity," "foraminal narrowing at L5–S1 and annular tears at L4–5 and L5–S1," "reduced strength (3/5) in the left iliopsoas, left quadriceps, left hamstring, left anterior tibial, left posterior tibial, left peroneal, and left gastric muscles," and "decreased sensation to the left leg and an antalgic gait." *Id.*

The Commissioner responds that the ALJ considered other medical sources in the record in assessing the consistency of Dr. Buchanan's opinion, including the findings of the state agency medical consultants (SAMCs), Drs. Ward and Hegde, both of whom found, among other things, that "Plaintiff was able to life and carry 20 pounds occasionally and 10 pounds frequently[.]" Dkt. No. 17 at 11.

The Commissioner also insists that the ALJ considered Dr. Rutledge's opinion that Plaintiff could not lift or carry anything, however, the ALJ ultimately found the opinion

unpersuasive. Dr. Rutledge's opinion, the Commissioner argues, was inconsistent with the medical record as a whole—which reflected objective evidence of only minimal degenerative disc disease and no records of recent treatment—and based solely on Plaintiff's subjective complaints. *Id.* at 12. Additionally, the Commissioner argues that the ALJ considered Plaintiff's: (1) 2017 examination by Dr. Buchanan; (2) minimal treatment history, (3) ability to perform activities of daily living, and (4) other objective medical evidence, all of which failed to support the degree of limitation assessed by Dr. Buchanan. *Id.* at 15–16.

Plaintiff replies that the ALJ was required to show "*how* the ALJ considered consistency," not just that he considered it. Dkt. No. 18 at 1–2. Additionally, Plaintiff argues that the Commission still "fails to address Plaintiff's citation to *Morris v. Kijakazi* . . . which highlights the need[] to comply with the specificity requirements of 20 C.F.R. § 404.1502c." *Id.* at 1.

An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Garcia v. Berryhill*, 880 F.3d 700, 705 n.7 (5th Cir. 2018) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). But "the general rule [is] that rejecting a conflicting medical opinion nevertheless requires an explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000)).

"For claims filed after March 27, 2017, an ALJ . . . considers a list of factors in determining what weight, if any, to give a medical opinion." *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). The most important of these factors are supportability and consistency. *Id.* "Supportability concerns the degree to which the objective medical evidence

and supporting explanations of the medical source support the medical source's own opinions, while consistency concerns the degree to which the medical source's opinion is consistent with the evidence from other medical sources and nonmedical sources within the record." *Bell v. Kijakazi*, No. 3:22-CV-01190-G-BH, 2023 WL 5836826, at *6 (N.D. Tex. July 14, 2023) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)), *report & rec. adopted*, 2023 WL 5835972 .

"There is little authority discussing what an ALJ must do to adequately 'explain' supportability and consistency or what happens when those discussions are missing." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297 at *3 (N.D. Tex. Jan. 21, 2022) (quoting *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021)). It appears clear that an ALJ's failure to use "magic words" or "precisely connect the dots" will not alone render the explanation insufficient. *Moore*, 2021 WL 754833, at *3 n.1. But the explanation must be ample enough "to permit meaningful judicial review." *Lara v. Kijakazi*, No. 3:21-cv-1032-L-BH, 2022 WL 4486085, at *13 (N.D. Tex. Aug. 29, 2022) (quoting *Dominick S. v. Kijakazi*, No. 3:20-CV-03473-E-BT, 2022 WL 2874705, at *4 (N.D. Tex. May 12, 2022)), *report & rec. adopted*, 2022 WL 4485826.

When the ALJ's "decision reflects consideration of [supportability and consistency] as well as a review and analysis of the objective record," this is generally deemed sufficient. *Lara*, 2022 WL 4486085, at *13; *see also Ray v. Comm'r of Soc. Sec.*, No. 4:21-cv-1709, 2022 WL 3566844, at *4 (S.D. Tex. Aug. 17, 2022) (finding that "although the ALJ did not specify which pieces of evidence in the record and evidence at the hearing [the doctor's]

10

opinion is inconsistent with, the ALJ outlined in detail Plaintiff's testimony, his reported

daily activities, and his medical records before evaluating the medical opinions.").

> Pertaining to the persuasiveness of Dr. Buchanan's opinion, the ALJ explained:

> The undersigned also considered the opinion of [Dr. Buchanan], who completed a medical source statement of ability to perform work-related physical activities (Exhibit B12F/8–13). [Buchanan] opined that the claimant could occasionally lift up to 10 pounds, sit a total of 6 hours in an 8-hour workday, stand for 15 minutes at one time and stand a total of 30 minutes in an 8-hour workday, and walk for 15 minutes at one time and walk a total of 30 minutes in an 8-hour workday, and he can never balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders, or scaffolds, and he must lie down for 1 hour per day. He also requires the use of a cane to ambulate, as he can ambulate without the use of a cane for no more than 10 feet. He can perform handling, fingering, feeling, and pushing and pulling with the left hand. He is limited to occasionally reaching and reaching all over bilaterally, and handling, fingering, and pushing and pulling with the right hand. He can operate foot controls occasionally with the right foot, and never operate foot controls with the left foot. He can tolerate moderate office noise. He should avoid exposure to extreme cold and heat, and vibrations, and never be around unprotected heights moving mechanical parts, or operating a motor vehicle. Exposure to humidity, dust, odors, fumes, and pulmonary irritants could be tolerated occasionally (Exhibit B12F8–13).

> The undersigned finds the opinion of [Buchanan] indicating that the claimant's ability to perform occasional lifting of 10 pounds is supported by the consultative examination at Exhibit B12F. However, the undersigned does not find the consultative examination persuasive that he is unable to carry 10 pounds, as this appears to be based on the claimant's subjective complaints of upper extremity pain and weakness, for which there is no support in the medical record. Nor does the undersigned find persuasive that he can only stand and walk a total of 15 minutes at one time or 30 minutes total out of an 8-hour day (Exhibit B12F).

Tr. at 641–42.

> Preceding this explanation, the ALJ recounted Dr. Buchanan's June 10, 2022, examination of Plaintiff that revealed lumbar spine tenderness and "severe rotational scoliosis and narrowing of the disc space at L5–S1 (Exhibit B12F/16)." Tr. at 633. But that

examination also revealed that Plaintiff's "strength was 4/5 in the upper/lower extremities, 5/5 muscle strength in the right the upper/lower extremities, 3–4/5 strength of the left hand-grip, and 5/5 muscle strength of the right handgrip." Tr. at 633.

The ALJ also recounted the hearing testimony of Dr. Alexander Todorov, an independent medical expert, who opined that "[Dr. Buchanan's] limitations regarding residual functional capacity at exhibit B12F/8–13 is not consistent with the physical findings and not supported by [Dr. Buchanan's] consultive evaluation." Tr. at 633. The ALJ explained that:

> Dr. Todorov also testified that the claimant has complaints of weakness involving the left upper and lower extremities, but this cannot be explained with lumbar pathology but rather an MRI of the intracranial or cervical spine. There was evidence of an MRI of the cervical spine dated August 9, 2016, which was essentially unremarkable and nothing in the cervical spine to explain weakness involving the claimant's left upper/lower extremities (Exhibits B2F/6; B9F/19; B10F/7. In addition, Dr. Todorov testified that there has been no suggestion of any back surgery in the record.

Tr. at 633.

Finally, the ALJ explained how the Plaintiff's March 2017 examination was "negative for fatigue" and "feelings of weakness." Tr. at 638. Plaintiff's examination in September 2017 revealed:

> [C]laimant's gait and station remained normal. Range of motion of the joints was also normal, as was his muscle tone and bulk. He also demonstrated 5/5 muscle strength in all four extremities . . . subsequent physical examinations dated through April 2018 routinely described him with normal musculoskeletal examinations. Specifically, range of motion were normal without any evidence of edema. The motor exam also revealed normal muscle bulk and overall muscle tone.

Tr. at 639.

Additionally, the ALJ discussed Plaintiff's (1) ability to perform activities of daily living and (2) failure to seek additional medical examinations or treatment for the four years between April 2018 and the June 2022 consultative examination order by the ALJ. Only after the ALJ provided these explanations did he conclude, in relevant part, that Dr. Buchanan's opinion was unpersuasive to the extent it reflected that Plaintiff was unable to carry 10 pounds. Tr. at 643.

The ALJ's explanation shows consideration of both consistency and supportability. And Plaintiff's argument that the ALJ's explanation constitutes nothing more than "rank speculation" is without merit. The ALJ did not commit legal error in evaluating Dr. Buchanan's opinion.

Lastly, the Court addresses Plaintiff's argument that the Commissioner still "fails to address Plaintiff's citation to *Morris v. Kijakazi* . . . which highlights the need[] to comply with the specificity requirements of 20 C.F.R. § 404.1502c." *Id.* at 1. But *Morris* supports the conclusion here that the ALJ's explanation was sufficient. *See Morris v. Kijakazi*, No. 4:21-CV-01243-O-BP, 2022 WL 10177703, at *4 (N.D. Tex. Sept. 29, 2022), *report & rec. adopted*, 2022 WL 10198818. The Court in *Morris* found the following explanation by the ALJ to meet the supportability and consistency requirements when finding Dr. Huffman unpersuasive:

> [Dr. Huffman] cites findings that are not reflected in his own treatment notes, such as leg weakness, when exams show normal strength. There is no support for the upper extremity limitations based on his exams that show good strength and normal sensation. He also notes cane use despite not mentioning this in any of his treatment notes. He also states the claimant has limited education and may have difficulty learning new tasks. However, at the consultative exam, the claimant performed normally in cognitive functioning,

> she worked for years in a semi-skilled job and graduated from high school.
> There is no support for this opinion. It is not based on objective evidence.

*Id.* It is difficult to discern a substantive difference between the articulation found proper in *Morris* and the one at issue here. The ALJ failure in *Morris* lay in not providing *any* analysis of the opinions offered by a physician's other than Huffman. This is not the case here.

## B.  The ALJ's step five finding was supported by substantial evidence.

Plaintiff claims that the ALJ's step five finding is not supported by substantial evidence because the three jobs identified by the ALJ that Plaintiff could perform—Order Clerk, Charge Account Clerk, and Credit Clerk—are either obsolete or do not exist in significant numbers in the national economy. Dkt. No. 14 at 10–15. Additionally, Plaintiff claims there is a conflict between the ALJ's stated RFC, which limits Plaintiff to "simple job tasks with little variation in duties and only simple exercise in judgment," and the step five jobs, which each require a GED reasoning level of 3 and a "temperament for attaining precise limits, tolerances, and standards." *Id.* at 16–19. This, Plaintiff argues, creates ambiguity in the meaning of and basis for the ALJ's limitation to simple judgment-making. *Id.* at 18–19.

The Commissioner responds that the ALJ properly used "the testimony of the VE and the framework of the Medical-Vocational Guidelines to conclude that a significant number of jobs existed in the national economy that Plaintiff could perform given his RFC and other vocational factors. (Tr. 642, Finding 9)." Dkt. No. 17 at 17.

14

The Commissioner further argues that "[t]he ALJ's hypothetical question to the VE included all relevant vocational information that pertained to Plaintiff, including his RFC (Tr. 726–727)." *Id.* And in response to that hypothetical question, the VE testified to the availability of the jobs in question which, the Commissioner argues, constituted substantial evidence to support the ALJ's finding as to those jobs. *Id.*

Moreover, the Commissioner urges, the Plaintiff did not challenge the VE's testimony on the issue of obsolescence, thus it was proper for the ALJ to consider the testimony. *Id.* at 18 (citing *Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000)). In other words, the Commissioner argues that the failure to object constituted a waiver by Plaintiff of the obsolescence issue. *Id.*

And finally, the Commissioner argues that Plaintiff's assertion that the jobs identified by the VE did not exist in significant numbers has no merit because the Fifth Circuit has declined to establish a "bright line rule on what constitutes a significant number of jobs in existence in the national economy." *Id.* at 19. "Moreover, the testimony of any VE is typically just a sampling of jobs a person can perform, not an exhaustive list of possible employments," and "Plaintiff failed to prove that he could not perform" the jobs in question. *Id.* at 20.

In reply, Plaintiff acknowledges that the Commissioner addressed the obsolescence and numbers of jobs in his Response—and still disputes the sufficiency of that Response on those points—but asserts that he failed to address whether those jobs conflict with the ALJ's RFC. Dkt. No. 18 at 2.

First, as to obsolescence, Plaintiff urges that the deference to the Commissioner, reflected in the definition of substantial evidence, should not apply where the VE testimony defies common sense. *Id.* at 3. Second, as to the number of jobs, Plaintiff argues that the caselaw is all over the map on this question—which it is—but that this Court should go with Plaintiff's cases because they are more recent and apply where, as Plaintiff argues here, the ALJ failed to consider additional "factors regarding the reliability of the VE beyond the VE's statement that part of the testimony was consistent and part of the testimony was based on professional experience and education." *Id.* at 3–4.

Plaintiff's obsolescence argument is without merit. The VE used the Dictionary of Occupational Titles (DOT) in arriving at the three jobs here. Tr. 642–44. And the ALJ relied on the VE's testimony in reaching his decision. But "[w]hether the DOT is outdated is not a determination this Court can make." *Walker v. Berryhill*, 2017 WL 6883894, at *5 (N.D. Tex. Dec. 19, 2017), *report & rec. adopted*, 2018 WL 339307. "The Regulations explicitly allow the ALJ to use the DOT." *Id.* (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)). The cases cited by Plaintiff in support of his obsolescence argument, *see* Dkt. No. 14 at 14–15, fail to persuade this Court to abandon this generally accepted principle.

And Plaintiff's argument that the jobs identified by the VE do not exist in significant numbers rests upon his obsolescence argument. *See* Dkt. No. 14 at 15 ("If the Court finds that Credit Clerk and Charge Account Clerk are obsolete, then it should remand this matter for the ALJ to determine whether 33,000 [Order Clerk] jobs is significant and/or if different jobs exist."). But the Court finds no fault with the ALJ's reliance on the DOT, thus,

16

Plaintiff's "significant number" argument falls by the wayside. Plaintiff's reliance on this Court's previous decision to relieve him of the obligation to challenge the VE's testimony, *see* Dkt. No. 18 at 4, is misplaced. When a claimant has an opportunity to correct perceived deficiencies in an ALJ's hypothetical question to the VE, the claimant cannot simply sit on his hands and later claim foul. *Carey*, 230 F.3d at 145–47.

Ultimately, the Fifth Circuit has not seen fit to establish a floor for what constitutes a significant number of jobs, preferring instead a "common sense" approach to this determination. *See Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (per curiam). But courts in the Fifth Circuit have found that numbers in the ballpark as the ones here can constitute significant numbers. *See Warren v. Astrue*, No. 09-CV-417, 2011 WL 3444268, at *3 n.2 (E.D. Tex. Aug. 5, 2011) (25,000 jobs nationally are a "significant number of jobs"); *McGee v. Astrue*, No. CIV. A. 08-0831, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009) (18,760 jobs in the national economy constitute significant numbers); *Ellis v. Astrue*, No. 11-2121, 2013 WL 595071, at *4 (W.D. La. Jan. 17, 2013) (finding that 16,566 jobs nationwide represent a significant number of jobs), *report & rec. adopted*, 2013 WL 596425. And Plaintiff provides no authority indicating that the numbers here are not significant.

Here, the VE's unchallenged testimony that the three jobs existed in significant numbers in the national economy provides the substantial evidence to support the ALJ's finding in that regard. The Court can find no error in these findings.

**C.  The ALJ did not fail to develop the record on Plaintiff's mental impairments.**

Plaintiff next asserts an error in connection with his mental health RFC. Specifically, he challenges the ALJ's finding of severe mental impairments when the prior administrative medical findings (PAMFs) available to the ALJ had found none. Dkt. No. 14 at 20. In other words, if the only opinions of record found no severe mental impairment, but the ALJ did, then the ALJ must have played doctor and should have instead developed the record, *i.e.*, request a mental health assessment of Plaintiff's current mental health condition and how that condition, if at all, affects his ability to work. *Id.* at 20–21.

The Commissioner acknowledges that the PAMFs found that Plaintiff had no severe mental health impairments, but argues that the ALJ had found these opinions partially persuasive because "more recent medical evidence and Plaintiff's hearing testimony" supported his mental RFC. Dkt. No. 17 at 21. Additionally, the ALJ's mental health RFC was consistent with his "paragraph B' findings at step three. *Id.* at 21–23. And while the "paragraph B" findings are not a substitute for an RFC, the Commissioner argues they do provide information the ALJ can draw upon, together with other evidence in the record, in determining RFC. *Id.* The Commissioner insists that this is what the ALJ did here, and the combination of objective evidence considered by the ALJ provides the substantial evidence necessary to support his mental health RFC determination. *Id.* at 23.

In reply, Plaintiff asserts that the Commissioner's argument "rests on the flawed assertion by the ALJ that the ALJ afforded partial weight to the PAMFs." Dkt. No. 18 at 4. Plaintiff says this is unlikely given the only commonality between the PAMFs and the

ALJ's decision is the finding of no disability, but otherwise the ALJ rejected those opinions. *Id.* at 4–5.

The claimant bears the burden of presenting evidence of disability. *See Audler*, 501 F.3d at 448. But "[t]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam)); *see also Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).

In reviewing de novo an eligibility determination, "[a] court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). The requirement for prejudice reflects the principle that reviewing courts do not hold the ALJ to procedural perfection. *See Jones*, 691 F.3d at 733. And "[t]o establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (quoting *Kane*, 731 F.2d at 1220).

At step three, the ALJ assessed the "paragraph B" criteria and determined that Plaintiff had mild limitations in understanding, remembering, or applying information, and in interacting with others. Tr. at 634. He determined that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself. Tr. at 634–35.

19

As the Commissioner notes, "[t]he Commissioner's policy guidance makes clear that the limitations identified in the 'paragraph B' criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Dkt. No. 17 at 21 (citing Social Security Ruling 96-8p, 1996 WL 374184, at *4 (1996)). And as the ALJ noted, "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." Tr. at 635.

The ALJ appears to have arrived at Plaintiff's mental RFC by reviewing the Plaintiff's medical records and considering the testimony at the hearing. *See* Tr. at 634–35, 639. And these sources led the ALJ to conclude that Plaintiff's "mental impairments are not an ongoing or significant condition for the claimant." Tr. at 640.

Pertaining to the PAMFs, the ALJ states that "the State psychological consultants opined and determined that the claimant has no severe mental medically determinable impairment. Tr. at 641. The ALJ then found that:

> [T]he opinion of the State agency consultants [are] partially persuasive, as their opinions are consistent with the determination that the claimant's conditions are not disabling; however, in more recent medical evidence, the claimant's hearing testimony, the undersigned does not adopt the opinions of the State agency consultants. Instead, the undersigned gave the claimant some benefit of the doubt and found that he is more limited physically and mentally than those opinions assessed, for the reasons discussed above.

Tr. at 641. The ALJ then found that Plaintiff did have mental limitations that would affect his ability to work and limited him to "perform[ing] simple job tasks (defined as routine repetitive tasks with little variation in duties and involving simple judgment-making)." Tr. at 635.

The Commissioner cites *West v. Kijakazi*, for the proposition that, "An ALJ may properly formulate an RFC that is not an adoption of any medical opinion while still basing his decision on substantial evidence." Dkt. No. 17 at 23 (citing, No. CV H-21-2395, 2022 WL 4137297, at *7 (S.D. Tex. Aug. 26, 2022), *report & rec. adopted*, 2022 WL 4138574). Also cited by the Commissioner is *Barrett v Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018). In *Barrett*, the Fifth Circuit observed:

> The role of an examining physician is twofold—their reports may contain ultimate opinions, but they also contain important factual observations. Those observations about an applicant's mental and physical condition are the first building block in the disability determination. They are the primary source that medical consultants and vocational experts use to form their opinions. Those opinions, akin to secondary sources, are less critical than the underlying observations because experienced ALJs can draw their own conclusions based on accurate medical information. The ALJ in this case did just that, concluding Barrett likely had greater limitations than the medical consultant suggested. Social Security regulations recognize the foundational nature of the examining physician's observations: consistency with those observations is a factor in determining the value of any doctor's opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

*Barrett*, 906 F.3d at 343. Here, Plaintiff does not appear to dispute the accuracy of the medical records and testimony relied on by the ALJ in analyzing the "paragraph B" factors or in formulating his mental RFC. See Tr. at 634–35; 639–41.

*West* highlights one distinction from this case. The court there found that "the ALJ's RFC is supported by substantial medical and psychological evidence supporting the ALJ's conclusions. Tr. 18–30 (citing evaluations, testing, and diagnoses *from the relevant time period*, as well as West's hearing testimony and statements to his treating physicians)." *West*, 2022 WL 4137297, at *7 (emphasis added). In this case, more than five years passed between the opinions of the State psychological consultants and the ALJ's decision. And

despite this passage of time, the ALJ did not request an updated mental health source report to determine either (1) how Plaintiff's mental limitations changed over five years, or (2) how those changes would affect Plaintiff's ability to work.

The passage of time between a Plaintiff's latest medical assessment and the ALJ's decision can give rise to a duty for the ALJ to obtain a current medical source report, but typically only if there is other evidence of record indicating that the plaintiff's condition has continued to deteriorate during that time. *See, e.g.*, *Washington v. Berryhill*, No. 3:17-cv-1-BK, 2017 WL 4422404, at *4 (N.D. Tex. Oct. 5, 2017); *Kenneth S. v. Saul*, No. 3:18-cv-2450-L-BN, 2019 WL 3881618, at *5 (N.D. Tex. July 31, 2019), *report & rec. adopted*, 2019 WL 3859653.

Here, there is no indication in the record that Plaintiff's mental health condition worsened during the five-year gap. And although Plaintiff's mental health conditions of depression and anxiety were mentioned in passing during the October 2022 hearing, neither Plaintiff nor his attorney suggested then that those conditions had worsened or that they otherwise warranted further development. Tr. at 686–731.

Nor did Plaintiff challenge the hypothetical posed to the VE that included a limitation to "simple job tasks (defined as routine repetitive tasks with little variation in duties and involving simple judgment-making.)" Tr. at 727–29. Indeed, other than being referenced as part of Plaintiff's history at the beginning of the hearing, the mental health conditions were not mentioned at all.

A reasonable inference from the record and testimony, which the ALJ apparently drew, is that the Plaintiff's mental health conditions remained both unchanged over time

and relatively insignificant. *See Loza*, 219 F.3d at 395 ("The ALJ is not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, *where such inference is not warranted by clinical findings*.") (citing *Spencer v. Schweiker*, 678 F.2d 42, 45 (5th Cir. 1982)).The Court cannot conclude on these facts that the ALJ failed to develop the record.

Ideally, the ALJ would have sought a more current mental health assessment. But even if the Court found that the ALJ failed to develop the record on Plaintiff's mental impairments, he must show he was prejudiced by that failure. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). To establish prejudice, Plaintiff must show that the ALJ's failure to develop and consider a more recent mental health assessment casts doubt on whether the ALJ's disability decision was supported by substantial evidence. *See McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. Mar. 6, 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

Plaintiff argues that the ALJ has shown prejudice for the Plaintiff in finding that the record warranted significant mental limitations, but then failing to show that his accounting for those in the RFC were sufficient. Dkt. No. 18 at 5. But it would be difficult to conclude on these facts that the ALJ's failure to seek an updated mental health assessment casts doubt on whether the ALJ's disability decision or the jobs identified by the VE were supported by substantial evidence. In other words, Plaintiff has failed to demonstrate that he "could and would have adduced evidence that might have altered the result," thus he has

23

shown no prejudice. *Brock*, 84 F.3d at 728. There is nothing before the Court now that suggests the result here would have been different.

## IV.  CONCLUSION

For the reasons explained above, the Court AFFIRMS the Commissioner's decision in all respects.

ORDERED this 29th day of March 2024.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

24